356 P.2d 1113 (1960)
CODY COMMUNITY TELEVISION CORP., a corporation, Appellant (Defendant below),
v.
Richard WAY, Appellee (Plaintiff below).
No. 2949
Supreme Court of Wyoming.
November 15, 1960.
Jones & Fillerup, Steadman & Steadman, Cody, Oliver W. Steadman and Henry T. Jones, Cody, for appellant.
Goppert & Fitzstephens, Cody, J.D. Fitzstephens, Cody, for appellee.
Before BLUME, C.J., and PARKER and HARNSBERGER, JJ.
*1114 Mr. Chief Justice BLUME delivered the opinion of the court.
About October 1, 1955, the defendant and appellant herein, the Cody Community Television Corporation, commenced to operate a station for receiving television signals, the station being located a short distance from Cody, the signals emanating from Billings, Montana, and the system at that time having only one channel. On December 7, 1955, defendant entered into an agreement with Richard Way, the plaintiff and appellee herein, in reference to making the system's operation available to the plaintiff. The main provisions of the contract will be mentioned hereafter. Subsequently in 1957 the appellant desired to construct an additional station on Carter Mountain near Cody to create another channel for the purpose of receiving television signals. It sent a letter to its customers asking whether or not the latter would be willing to pay $6 a month rental instead of $5 a month rental if the defendant should make an additional channel available to its customers. Most of the customers agreed to the increased rental. A few, including the plaintiff, refused to do so and have never paid any additional rental but have always paid the $5 mentioned in the contract hereafter set out. The additional channel has since that time been created and, as we understand it, is in operation at this time. When the plaintiff Way refused to pay the additional charge the appellant placed a filter on his line which eliminated all channels except the original one. Thereupon the plaintiff and appellee instituted this action on May 5, 1959, alleging irreparable damages and that the action of the plaintiff was deliberate and malicious. Exemplary damages were asked. Defendant answered, denying that it acted maliciously and deliberately and alleging that its action was pursuant to the contract entered into between the parties. At the final hearing herein the court entered an order granting an injunction and prohibiting the appellant from installing and maintaining a filter or other device to prevent the plaintiff from receiving the services from the defendant which he was receiving prior to May 1, 1959, for so long as the contract dated December 1955 between the parties should be in effect. The court further entered judgment against the appellant for $40 and the costs of the action but refused to allow exemplary damages. From that judgment appellant has appealed to this court:
The contract entered into between the parties on December 7, 1955, in part provides as follows:
"In Consideration of the following specified sums to be paid by the Subscriber, the Company hereby agrees to extend its Community Antenna System (hereinafter referred to as `the System') to make available television signals to the Subscriber at the following premises:"
The premises are described and the consideration mentioned is a contribution of $150 plus a monthly service charge of $5. Paragraph 1A, among other things, provides:
"* * * The System as presently constituted will supply signals upon one channel. However, the System will be capable of multichannel operation when and if additional stations are available."
Paragraph 4C provides in part as follows:
"Either the Subscriber or the Company may terminate this Agreement for any reason and at any time by giving notice in writing at least 30 days in advance of the termination date. * * *"
Other provisions relate to the termination within twelve months of the commencement of service under the contract, but since that time has long expired it is not necessary to set it out herein, so that the only remaining provision is that either of the parties may upon thirty days' notice cancel the contract at any time and at will with impunity.

*1115 1. The Meaning of the Contract.
The contention of the plaintiff is that the rental of $5 per month is the only rental required on his part in order to receive the use of all the channels connected with the appellant's system, while the defendant and appellant herein claims that the contract does not forbid raising the rental when more than one channel becomes available since the additional channel was not in existence at the time when the contract was entered into. Counsel for appellant cite us to many authorities relating to the rule that oral conversations are merged in the written contract and that implied covenants are not favored. We have no quarrel with these authorities. The only question is as to whether or not they apply in the case at bar. Counsel for appellant state in their brief:
"* * * Nowhere in the contract do the parties agree that there will not be an additional charge or charges when additional channels become available. * * *
* * * * * *
"The language of the contract here in question is `the Subscriber agrees to pay a service charge of $5.00 a month * * *' There is no language that there should never be any additional charge for additional channels. * * * There is no language to indicate that no further charge would be made nor was it so clearly contemplated that it would be unnecessary to express it. * * *" (Emphasis supplied.)
So counsel conclude that an additional rental may be charged. But, of course, a little reflection will show that this is simply reasoning in a circle. It might as well be said that since there is no word in the contract saying that an additional charge may be made, it cannot be made. Counsel cite us to and rely upon the case of A.B.C. Distributing Co. v. Distillers Distributing Corporation, 154 Cal. App.2d 175, 316 P.2d 71, wherein it was held that matters intentionally omitted from a contract may not be added under the guise of an interpretation. Counsel for appellant conclude that since the contract intentionally omitted to say that an increase in rental may not be made, it may be made, but of course it may as well be said that since the contract intentionally omitted to say that an additional rental may be made, none can be made. So the question still remains: What was it that was intentionally omitted? Our research must go further.
Counsel construe the contract as though it contains the following italicized words, thus making it read as follows:
"In Consideration of a contribution of $150 plus a monthly service charge of $5.00 to be paid by the Subscriber, the Company hereby agrees to extend its Community Antenna System (hereinafter referred to as `the System') as now existing to make available television signals, that is to say those available at this time, to the Subscriber at the following premises:"
This sounds very much as though counsel were attempting to introduce into the contract an implied covenant (not favored, they say) to the effect that an additional charge may be made when additional channels become available. The contract does not say so. The italicized words are not in it. We think the contrary may be inferred. The contract does not say that the rental of $5 per month is for the use of one channel but for the use of the system. Almost any system may be changed, modified and enlarged at any time. The contract states that it is contemplated that the system will be enlarged. If an additional rental had been contemplated upon such an enlargement, we should naturally have expected that it would have been so expressed in connection with that statement, but we find nothing of the sort. In Conservative Federal Savings & Loan Association v. Warnecke, Mo., 324 S.W.2d 471, cited by counsel for appellant, the landlord increased the rental but there was a specific provision in the contract that such increase in the rental might be made. So in the case at bar, if any *1116 additional rental was contemplated when the system was increased, it should have been so stated in the contract. In 52 C.J.S. Landlord and Tenant § 503, speaking of an increase in rental, it is stated:
"Subject to the rules applicable to the modification of leases in general, as discussed supra § 229, rent may be increased or reduced in amount by the express or implied agreement of the parties, provided the agreement is clear, definite, and certain, and all interested parties assent thereto; but there is no change of the tenant's obligation to pay rent where the facts are insufficient to establish such an agreement, or where the agreement is too indefinite and uncertain to be enforced. * * *"
In 32 C.J.S. Evidence § 930, pp. 854, 855, it is stated:

"Corroborative evidence. Evidence consistent with the instrument and offered merely to show the truth of the facts therein stated is competent."
In the case at bar, evidence was introduced that no additional rental was expected if the system should be increased. The foregoing statement is consistent with the interpretation we have given to the contract here in question.
Assuming, however, that what we have said is erroneous, then the most that we could say is that the contract is silent on the point of an increase of rental, that is to say, that the contract is incomplete. In that case oral testimony can be introduced to show the complete agreement. 2 Jones, Evidence, 5th ed., p. 906, 32 C.J.S. Evidence § 945; 3 Corbin, Contracts, 1960, § 583. Such evidence was introduced, as already mentioned, justifying the trial court in its finding.

2. Enjoining the Violation of a Contract.
Counsel for appellant argue that since the contract may be canceled by either party at any time the contract is too indefinite to be specifically enforced and since an injunction against violation of the contract serves the function of specific performance thereof the judgment for an injunction herein was erroneous. However, the authorities do not go quite that far. In 43 C.J.S. Injunctions § 80c(1), it is stated:
"In accordance with the general rule discussed supra § 14, the granting of an injunction to restrain a breach of contract rests largely in the sound discretion of the court. * * *"
In 28 Am.Jur., 1959, Injunctions § 85, it is stated:
"A court of equity will endeavor, to the extent of its powers, to bind men's consciences so far as they can be bound to a true and literal performance of their agreements, and will not suffer them to depart from their contracts at pleasure, leaving the party with whom they have contracted to the mere chance of any damages which a jury may give. It will, therefore, in a proper case, enforce a contract by enjoining violations of the terms thereof, notwithstanding the nature of the contract may be such that specific performance thereof could not be enforced. * * *"
In the same volume, § 86, p. 585, it is stated:
"It was formerly thought that an injunction would not be granted to restrain the breach of any contract, unless the contract was of a character that the court could specifically enforce. But the fair result of the authorities may be said to be that where the case is one in which the negative remedy by injunction will do substantial justice between the parties by compelling the defendant to carry out his contract or lose all benefit of the breach, and the remedy at law is inadequate, and there is no reason or policy against it, the court will interfere to restrain conduct which is contrary to the contract, although it may be unable to enforce specific performance of it. * * *"
*1117 We cannot, accordingly, say that the action of the court in granting an injunction herein is reversible error.

3. Damages.
Counsel for appellant complain that the court awarded damages in the sum of $40, as heretofore noted. The court refused to award exemplary damages so it is quite clear that the damages allowed by the court were considered to be nominal damages. In 25 C.J.S. Damages § 9, it is stated:
"* * * where a legal wrong is established but there is no evidence as to actual damages, nominal damages are properly awarded. In other words, where plaintiff establishes a cause of action but fails to show any damage, he may recover nominal damages. * * *"
Counsel calls attention to the fact that plaintiff himself testified that he sustained no damages but that of course would not, under the authority mentioned, prevent the allowance of nominal damages. The only question remaining is as to whether or not the sum of $40 constitutes nominal damages. That point has not been argued so we do not pass on it.
It follows from what we have said that the judgment of the trial court should be and is affirmed.
Affirmed.