Clarence M. LEE and James H. Lee,
Appellants (Defendants below),

v.

Jay BROWN and Iowana E. Brown,
Appellees (Plaintiffs below).

No. 2942.

Supreme Court of Wyoming.

Dec. 27, 1960.

Byron Hirst, Cheyenne, for appellant.

Greenwood, Ferrall, Bloomfield, Osborn & Lynch, James A. Greenwood, Cheyenne, for appellees.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This appeal involves the question whether an injunction should be granted with the effect and under the circumstances hereinafter mentioned. The Browns were plaintiffs in this case and are called by their name or as appellees herein. The Lees were defendants in the case and are hereafter called by name or as appellants.

The appellees are the owners of the SE¼, sec. 27, and the NE¼, sec. 34, T. 14 N., R. 61 W., 6th p. m., Laramie County, Wyoming. The appellants herein are the owners of the SW¼, sec. 26, and the NW¼, sec. 35, in the above township and range. The lands herein adjoin the intersection of two county roads about six miles west of Pine Bluffs. One of the roads runs east and west and one of the roads runs north and south, the lands of the appellants being situated directly across the road from the lands of the appellees. The buildings of the appellees are situated close to the northwest corner of the intersection. Some fifty or more feet east of the north and south road above mentioned, the appellants have an irrigation ditch running north and south, called an elevated ditch on Plaintiffs' Exhibit 1; it or the embankments of which are called a dike by the appellees herein.

On December 18, 1957, the appellees filed their amended petition. In the first cause of action they alleged that the natural drainage of the lands is from the lands in the west on and over the lands of the appellees; that the appellants maintained and operated an earth dike running in a north and south direction, parallel with the west boundary of said lands of the appellants; that in 1953 the appellants constructed and caused to be constructed upon and close to the west boundary of the NW¼, sec. 35, aforesaid, a dike for a distance of about 800 feet; that they also constructed and maintained a dike along the west boundary line of the SW¼ SW¼, sec. 26, aforesaid, for a distance of about 500 feet; that said dikes have been since 1953 and now are negligently maintained, used and operated without any means of releasing through or under said dikes surface water developed from snow and rain in the area immediately west of said dikes; that said dikes cause and compel the surface water to accumulate immediately west of said dikes and submerge appellees' lands in the southeast corner of the SE¼, sec. 27, aforesaid; and that a

flood occurred in 1954 and, by reason of water being held back as above mentioned, the appellees lost fifty tons of alfalfa of the value of $1,500 and appellees asked judgment for that amount. In the second cause of action, they alleged that a flood occurred in 1957 with a similar result as that which occurred in 1954 by reason of which eighty tons of alfalfa were ruined and some of the buildings of the appellees were damaged and destroyed and they asked judgment for $3,999 on that account. In the third cause of action, the appellees asked for an injunction restraining the appellants from maintaining the dike above mentioned.

The appellants answered, alleging that the surface waters run in different directions and that no natural watercourse runs across the lands. They admitted that they have maintained and operated an irrigation aqueduct running in a north and south direction parallel with the west boundary of said lands of appellants. They further alleged that the aqueduct is solely for the purpose of transporting irrigation water across the lands of the appellants and is not a "dike" within the accepted meaning of the term for the storage and retention of water; that the appellees are estopped from claiming that the aqueduct could not be maintained since it was constructed sometime in 1946 or 1948 with the consent of the appellees; that the County of Laramie has recently made improvements to the road running between the lands of the appellees and the appellants so that the surface water could be diffused down and through the borrow pits along the roads; and that appellants have not been negligent in any manner. They also, in answer to the third cause of action, alleged that appellees were not entitled to an injunction but that they had an adequate remedy at law. A number of other allegations were made which need not be mentioned herein.

On April 26, 1958, the court made an order pursuant to a motion that the third cause of action for equitable relief should

be separately tried before the court after the action for damages had been tried.

The action for damages was tried before a jury and that body on May 16, 1958, returned a verdict for appellees for $750 on the first cause of action and $2,474 on the second cause of action. Judgment was entered pursuant to the verdict. An appeal was taken from the judgment but it was never completed. The amount awarded was paid by the appellants on June 27, 1958, so that the question of damages is no longer in this case.

The question for injunction on the third cause of action came on to be heard before the court without a jury on December 18, 1958. Additional evidence was taken and considered in conjunction with the evidence previously taken. On May 4, 1959, the court entered an order granting an injunction as hereafter mentioned. A motion for a new trial was filed which was not acted upon and therefore was considered denied on July 6, 1959, under the rules of this court. On August 3, 1959, the appellants gave notice of appeal. A statement of the points relied upon in this case was filed. Many points are stated but we need to mention only those hereafter discussed.

■ 1. The appellees filed a motion to dismiss the appeal on the part of the appellants stating, among other things, "The Judgment of May 22, 1958, is a conclusive judicial disposition of all the issues considered on the hearing of December 18, 1958, upon which the Decree of May 7, 1959, was entered." In other words, counsel for the appellees claim that the matter was res judicata by reason of the verdict returned by the jury and the judgment rendered thereon. We think counsel are mistaken. The claim and remedy for damages are different from the claim for an injunction. Counsel cite us to 50 C.J.S. Judgments § 609 (1947) saying that the claim for injunction is merged with the law action. However, it is stated in the authority cited:

"* * * Conversely, a final judgment on the merits in an action at law will bar any further action between the same parties on the same cause of action in a court of equity, subject to some exceptions, as where, because the subject matter is within the exclusive jurisdiction of equity, or for some other reason, the matter could not rightfully have been determined in the action at law. * * *"

The jury in this case could not have made or entered a judgment for an injunction. That matter was exclusively within the province of a court of equity and could be determined only by it. The motion to dismiss is accordingly overruled.

2. Counsel for the appellants argues at length that the court adopted the wrong rule of law in connection with surface water. It is quite clear herein that the court followed the rule of the civil law which has been adopted in a number of jurisdictions, which is that, as between the owners of higher and lower ground, the upper proprietor has an easement to have surface water flow naturally from his land onto the land of the lower proprietor, which is subject to a corresponding servitude, and that the lower proprietor has no right to obstruct its flow and cast the water back on the land above. 93 C.J.S. Waters § 114a(1), p. 803 (1956). However, it is stated at p. 805:

"Where a strict application of the civil-law rule might result in very great hardship on the lower landowner, who would thereby be prevented from improving his land or using it as he would otherwise have a right to use it, courts have sometimes adopted what may be called a 'reasonableness of use' rule * * *."

The common-law rule, which has been adopted in some jurisdictions, is entirely different. Under that rule surface water is considered as a common enemy which every proprietor may fight as he deems best, regardless of its effect on other pro-

prietors and the lower proprietor may take any measures necessary for the protection or improvements of his property, although the result is to throw the water back on the land of an adjoining proprietor, provided it is not done in a reckless manner. Some courts have adopted what is called a modified common-law rule which is to the effect that one must use his own land so as not unnecessarily or negligently to injure others. 93 C.J.S. Waters § 114a(2) (1956). That is evidently the rule which counsel for appellants claims should have been adopted in the case at bar, and he states that that rule was adopted by this court in the case of Tompkins v. Byrtus, 72 Wyo. 537, 267 P.2d 753. This court held that the trial court was justified in finding that the proprietor of lower land was negligent in not adopting measures to prevent surface water coming from upper land from damaging his property. But the rule as to surface water was neither argued nor discussed. Ladd v. Redle, 12 Wyo. 362, 75 P. 691, and Howell v. Big Horn Basin Colonization Co., 14 Wyo. 14, 81 P. 785, 1 L.R.A.,N.S., 596, do not involve surface water. In view of the facts herein, we do not think that it is necessary in this case to determine what rule in regard to surface water should be adopted in this state or to what extent it should be applied under particular circumstances.

3. Counsel for appellants contends that the appellees had an adequate remedy at law and, by reason of changed conditions since the flood of 1957, there is no reason for the granting of an injunction. The trial court and the jury examined the lands in question and this court is not in as good a position to understand the facts as they. Risking stating slight inaccuracies, the facts are substantially as follows: During the floods of 1954 and 1957, the flood waters, when leaving the lands of the appellees, washed over the north and south road and onto the lands of the appellants, struck the dike and were held back, damaging the appellees. At that time the drainage conditions in that terrain were poor. The north and south road was not high enough, the borrow pits were not deep enough for drainage, and culverts were practically nonexistent. After the flood of 1957, the County Commissioners of Laramie County undertook to remedy the danger arising from floods to the lands of the parties herein. Mr. Rex Crews, road and bridge commissioner of the county, a witness herein, undertook to make these changes. He analyzed the drainage problem by the use of aerial photographs. He raised the north and south road by some 18 to 30 inches, taking the material therefor from the borrow pits along the road, thereby deepening the borrow pits and increasing their capacity for drainage. The height of the road was raised less in some places than it was in others in order to effect proper drainage. It left the dike in question only some 12 to 14 inches higher. The east and west road along the lands of the appellees herein was also graded for a distance of about 200 feet in order to effect proper drainage. A deep borrow pit was made at the northeast corner of the intersection. This was 8 feet wide at the top, 4 feet wide in the bottom, and 4½ feet deep, thus taking care of a large amount of floodwater. Two 24-inch culverts were placed at the intersection to drain the water to the east. One culvert was placed under the irrigation ditch of the appellants and another across the north and south road about a half mile north of the intersection. Mr. Crews had been County Commissioner of Laramie County for a period of ten years and had been engaged in constructing roads for a further period of six years. He stated that there were many floods in Laramie County. He knew the condition generally of the terrain near Pine Bluffs, Wyoming. He testified that he did not know of the flood of 1954 but knew of the flood of 1957 and in his judgment the changes that were made in the roads and at the intersection were sufficient to protect the appellees except under very extraordinary circumstances. The ability of Mr. Crews,

his experience, the fact that he undertook to remedy the difficulties with floods in the area in question, and his testimony that he considered that these difficulties were overcome should, in the absence of a showing to the contrary, be rather persuasive in convincing this court of the probability of the correctness of his testimony, just as it convinced the trial court. For that court, in a letter of January 1959 addressed to counsel herein, which this court will consider under Rule 52 of the Wyoming Rules of Civil Procedure, stated as follows:

"The Court is of the opinion that the present situation is such that this [damage to appellees] should not occur under all readily foreseeable circumstances, and therefore will not order that any specific action be taken by the defendants in this regard."

And in that connection we must bear in mind that courts do not, ordinarily at least, make their findings and draw their conclusions from mere possibility but from probability or certainty. Here it is obvious that probability of further damage from floods in the area in question is absent. There remains a mere possibility. Notwithstanding that, the trial court entered the following judgment:

"Now, Therefore, It Is Ordered And Decreed that defendants be and they are enjoined from so maintaining and operating ditches, embankments and dikes on the SW¼SW¼ of Section 26 and on the NW¼ of Section 35, Township 14 North, Range 61 West of the 6th P.M. in such manner as to obstruct the natural course of surface water flowing on, over and across the SE¼ of Section 27 and the NE¼ of Section 34, Township 14 North, Range 61 West of the 6th P.M. and from in any manner preventing surface waters escaping from plaintiffs' land and from holding said surface waters back by means of ditches, embankments and dikes maintained and operated by defendants, causing said

surface waters to accumulate back of said ditches, embankments and dikes to the West thereof and on the SE¼ of Section 27 and the NE¼ of Section 34, Township 14 North, Range 61 West of the 6th P.M.

"The Court retains jurisdiction of this cause to enforce this Order and Decree and to award to plaintiffs any damages plaintiffs may sustain by reason of any violation of the provisions thereof and to punish the defendants for any violation of the provisions of this Decree."

So the question before us remains as to whether or not, under the circumstances as testified to by the witness Rex Crews and under the foregoing finding of the trial court, an injunction should have been entered herein rather than to leave the appellees the remedy at law for damages. Hence, we shall examine the rules applicable in connection with injunctions. 1 High, Injunctions, 4th ed., p. 36, states:

"An injunction, being the 'strong arm of equity,' should never be granted except in a clear case of irreparable injury, and with a full conviction on the part of the court of its urgent necessity. * * *"

In 28 Am.Jur. Injunctions § 25 (1959) it is stated:

"The extraordinary character of the injunctive remedy and the danger that its use in improper cases may result in serious loss or inconvenience to an innocent party require that the power to issue it should not be lightly indulged in, but should be exercised sparingly and cautiously after thoughtful deliberation, and with a full conviction on the part of the court of its urgent necessity. In other words, the relief should be awarded only in clear cases, reasonably free from doubt, and when necessary to prevent great and irreparable injury. The court should therefore be guided by the fact that the burden of proof rests upon

the complainant to establish the material allegations entitling him to relief. * * *"

In 43 C.J.S. Injunctions § 12 (1945) it is stated:

" * * * Since an injunction should not be made an instrument of oppression and injury, it will not be granted when good conscience does not require it, where it will operate oppressively or contrary to justice, where it is not reasonable and equitable under the circumstances of the case * *."

In § 15 of the same authority, it is stated:

"The power of the courts to issue injunctions should be exercised with great caution and only where the reason and necessity therefor are clearly established. * * *"

In § 25c(3) it is stated:

"As the principal remedy afforded by courts of law for an injury is money damages, if such damages will constitute an adequate compensation for the injury threatened or inflicted, equity will not interfere by injunction. In such case plaintiff must resort to an action at law for the damages sustained * * *."

██ Applying these rules of law in the case at bar, the conclusion at which we must arrive is quite clear. As shown by the evidence, the appellants raise various crops on their lands by and through the use of an irrigation ditch which could not be raised otherwise. That is perhaps the only means they have to make a living. Irrigation in this state is important. Without reference to what rule as to surface water should be applied in this case, it would seem to be clear that, in view of what the evidence in this case shows as to the changes that have been made in the roads as heretofore related and in view of the trial court's own finding as above stated, there is no urgent necessity such as is required by the authorities to justify an injunction against maintaining the irrigation ditch on the part of the appellants. Furthermore, it does not appear why, in any event, an action for damages would not be a sufficient remedy. The trial court's judgment, accordingly, in granting an injunction is set aside and the action herein, insofar as pertains to an injunction, is dismissed.

Reversed.