RIALTO THEATRE, INC., a Wyoming corporation, Appellant (Plaintiff),

v.

COMMONWEALTH THEATRES, INC., a Missouri corporation, Appellee (Defendant). (Two Cases)

COMMONWEALTH THEATRES, INC., a Missouri corporation, Appellant (Defendant),

v.

RIALTO THEATRE, INC., a Wyoming corporation, Appellee (Plaintiff).

Nos. 84–162, 84–163 and 84–233.

Supreme Court of Wyoming.

Feb. 3, 1986.

James R. McCarty, Casper, for Rialto Theatre, Inc.

Robert Jerry Hand, of Hand, Hand & Hand, P.C., Casper, for Commonwealth Theatres, Inc.

Before THOMAS, C.J., and ROSE,* ROONEY,** BROWN, and CARDINE, JJ.

ROSE, Justice.

Procedurally the instant three combined appeals are unusual as they are taken from two separate lawsuits filed by Rialto Theatre, Inc. against Commonwealth Theatres, Inc. for asserted violations of a lease agreement between the parties originally executed in 1968. The object of that agreement was the operation of theatres owned by Rialto in Casper, Wyoming, by Commonwealth. Rialto sought injunctive relief and monetary damages for asserted violations of a lease provision which prohibited competition between the parties and which requi.. .d future cooperation in protecting the market from outside competition by construction of additional theatres when deemed necessary by either party.

In its original complaint filed on May 14, 1982, Rialto sought an injunction preventing the opening of a new theatre by Commonwealth and monetary damages for lost rents as a result of the opening of a second theatre by Commonwealth in 1974. The district court dismissed the cause of action praying for injunctive relief. Trial on the remaining count resulted in a determination by the jury that, although Commonwealth had breached the lease, Rialto failed to prove the amount of its damages with reasonable certainty. Rialto has appealed the dismissal of the injunctive count and additionally argues the jury erred in awarding only nominal damages (Appeal No. 84–162). Commonwealth has also appealed, asserting that the district court should have ruled as a matter of law that the paragraph of the lease relied upon by Rialto wàs unenforceable (Appeal No. 84–163).

The second lawsuit filed by Rialto sought to enjoin Commonwealth from continued operation of the additional theatres until the lease term expired. This complaint was filed on April 16, 1984, some 12 days after the jury returned its verdict in the original lawsuit but prior to the entry of the court's judgment on May 9, 1984. A motion to dismiss on the grounds of res judicata and collateral estoppel was granted on August 9, 1984. Rialto has appealed (Appeal No. 84–233), and this court has combined the cases for purposes of decision.

We shall affirm the district court's decision in No. 84–162 and No. 84–233, and dismiss the claims for injunctive relief. We shall remand No. 84–163 for entry of an order dismissing the claim for damages for violation of the lease agreement.

By a lease and sublease agreement[1] executed on August 6, 1968, Rialto Theatre, Inc. rented various theatre properties locat-

---

* Justice Rose circulated the opinion of the Court October 22, 1985, and retired November 1, 1985.

** Retired November 30, 1985.

1.  This agreement is the successor to an earlier lease between the parties executed in 1962. As was the case at the time the 1968 lease was executed, Rialto owned or operated all the movie theatres in Casper, Wyoming, when the original lease was drawn and the parties agreed to cooperate to keep competition out of the market.

ed in Casper, Wyoming, and nearby communities to Commonwealth Theatres, Inc. for a term of 15 years with an option to renew for an additional five years. Rent on all the properties was set at a minimum fixed amount per year plus percentages of gross revenues from ticket sales, concessions and other sources. As part of that document, the parties agreed that:

"14. Lessor and Lessee respectively warrant to each other that neither they nor their respective officers, directors or stockholders shall, during the term hereof, enter directly or indirectly into the business of owning, operating or managing theatres within twenty-five (25) miles of the city limits of Casper, Wyoming, without the prior written consent of the other. In the event either Lessor or Lessee desires or deems it necessary to build another theatre in Casper, Wyoming, then it is agreed that Lessor and Lessee will enter into an agreement to construct the same and will enter into a lease thereof."

During the next several years relations between the parties were handled primarily by Russell W. Schulte for Rialto and Richard H. Orear on behalf of Commonwealth, the presidents of the respective corporations. As is frequently the case in family-oriented closely held corporations, such as Rialto and Commonwealth, communications between the parties began to deteriorate in 1976, following the death of one of the principals, Russell W. Schulte. Prior to that time, Commonwealth and Rialto had jointly participated in developing and opening the Mile-Hi Drive-In Theatre in Casper. Similarly, the parties actively pursued the possibility of opening a new indoor theatre together during 1971 within the provisions of the lease agreement. Plans for this project were scrapped when the contractor who was to do the work on the new theatre was unable to obtain a building permit.

In 1973, Commonwealth again approached Rialto with a proposal that Rialto participate in the opening of a new indoor theatre in Casper which was to be built in the Beverly Plaza Shopping Center. A number of unsuccessful discussions were held between Orear and Schulte in an attempt to persuade Rialto to participate in the venture. On March 6, 1973, Orear sent a letter to Schulte urging that Rialto participate in the project; however, Schulte declined, as Rialto was involved in the construction of a theatre in Glenwood Springs, Colorado, at the time. The Beverly Twin Cinema opened in Casper in February of 1974, and is one of the theatres whose operation is complained of in this case.

In February of 1977, after Russell Schulte's death, Orear, who was now chairman of the board of Commonwealth, wrote Russell's son, Edward J. Schulte, M.D., who had assumed the presidency of Rialto, that there were rumors that a new theatre would be built in Casper and it was necessary that they work together to keep out the competition. Dr. Schulte wrote back on May 30, 1977, questioning whether a new theatre was needed and, even if built, whether competition would be kept out. Figures regarding the success of the Beverly Twin were requested, and Commonwealth was notified that:

"* * * [T]he Schulte Family is quite interested in protecting their basic theatre interests in Casper. In that regard we want to be included in any decision making concerning future theatre operations in Casper. It is also expected of Commonwealth that they will uphold Paragraph 14 of the lease, the provisions of which were apparently ignored when the Beverly Twins were built."

Orear responded on behalf of Commonwealth on June 7, 1977, outlining the events leading to the opening of the Beverly Twin and requesting to meet together with representatives of Rialto to determine their future plans together. Such a meeting was held in July, 1977, in Denver, Colorado.

In 1978 two significant events occurred: Fred Schulte took over as president of Rialto, and Commonwealth acquired a company called Westco Theatres. One of the assets acquired by Commonwealth in this purchase was an option to operate a theatre in

the Eastridge Mall which was to be built in Casper by Price Development Company of Salt Lake City, Utah. The record is conflicting as to whether or not Rialto knew of Commonwealth's interest in moving into the Eastridge Mall. Applying our usual appellate standard of review in favor of the jury's verdict, we will assume that Rialto did not discover Commonwealth's interest in the Eastridge venture until sometime in 1981. Contemporaneously, the parties were investigating the possibility of jointly participating in the opening of a new multi-screen theatre complex on the site of the Mile-Hi Drive In.

Commonwealth exercised the option to renew the 1968 agreement on December 30, 1981. Plans to build a new theatre on the Mile-Hi site were actively discussed by the parties. In addition, Rialto was informed of the proposal to build a new theatre in the Eastridge Mall. In June of 1981, Orear sent a letter to Fred Schulte urging that a decision with respect to building on the Mile-Hi site be reached soon to ensure the building could be enclosed prior to the onset of winter. Again, in August of 1981, Orear wrote Rialto stating that it was vital to start construction on the Mile-Hi. In addition, Schulte was informed that Commonwealth had engaged in further discussions with the developers of the Eastridge Mall and the developers were threatening, in no uncertain terms, to bring a competitor into the Casper area to lease the new theatre.

On November 20, 1981, Orear wrote a letter on behalf of Commonwealth, outlining a plan whereby Commonwealth and Rialto would create a new jointly held corporation which would take over the existing lease, lease the yet-to-be-constructed Westwood Theatre on the Mile-Hi site, and lease or sublease the Eastridge project. An alternative proposal which would have required Rialto to finance construction of the Westwood by its own resources was also discussed. In a follow-up letter on December 7, 1981, Commonwealth requested that a decision be made on the construction of the Westwood Theatre. In the meantime, negotiations on the Eastridge project had stalled, as the developer refused to return Commonwealth's calls and desired a combination lease coupling a project in Idaho Falls, Idaho, to the lease on the Casper theatre.

On April 6, 1982, Orear wrote a letter advising that the Eastridge developer had rescinded its demand for a combination lease but that it appeared unlikely Commonwealth would accede to the remaining terms demanded for the Eastridge project. The possibility of building a multi-screen theatre on the Mile-Hi site was again renewed, but it was noted that this would be a near impossibility unless Commonwealth had a very favorable ground rent from Rialto. Orear suggested that, in order to allow Commonwealth to build a new theatre, it was imperative that the Rialto Theatre be closed and that rent be eliminated from the lease between the parties.

Further negotiations with the Eastridge developers were conducted by Commonwealth. On April 14, 1982, Orear wrote Schulte, confirming a planned meeting between the parties and extending the opportunity for Rialto to participate in that project.

A meeting between the parties was held on April 20 and 21, 1982, in Casper. At that time, it was proposed Commonwealth buy out the Rialto interests, and other options were explored. Unfortunately, the parties were unable to reach an agreement and remained at an impasse. Shortly thereafter, Commonwealth closed the deal on the Eastridge project, thereby precipitating the institution of legal proceedings.

Procedurally, the instant appeals are deceptively simple. Rialto filed a two-count complaint on May 14, 1982 against Commonwealth, seeking pecuniary damages for breach of the lease agreement as a result of the operation of the Beverly Twin Cinema, and injunctive relief preventing Commonwealth from leasing or operating the Eastridge Mall theatre. Commonwealth answered on June 4, 1982, and moved for dismissal of the count praying for injunctive relief on the grounds that Rialto failed

to allege a claim. Summary judgment on the count seeking monetary damages was also requested and supported by affidavit of Richard H. Orear. Following a hearing held on June 30, 1982, the district court denied the motion for summary judgment but granted dismissal of the claim for injunctive relief by an order dated July 9, 1982. At the time of pretrial conference, Rialto sought and was granted the right to amend its pleading to ask for additional damages as a result of the opening of the Eastridge Mall theatre. On August 16, 1983, Commonwealth renewed its motion for summary judgment, and this motion was denied after hearing by an order entered December 29, 1983.

Trial on the matter began on April 2, 1984 and ended on April 4, 1984, with the jury returning a verdict in favor of Rialto but assessing damages to be only one dollar. Judgment on the verdict was not entered until May 9, 1984. Various post-judgment motions, including a motion for reconsideration of application for injunctive relief, and a motion for new trial or for order granting additur, were filed by Rialto and denied by the court on June 25, 1984. Rialto filed a premature notice of appeal[2] on June 15, 1984. Commonwealth perfected a cross-appeal by filing its notice of appeal on June 29, 1984.

Less than two weeks after the jury returned its verdict in the original suit, Rialto filed a second complaint in the district court, seeking to enjoin Commonwealth from "directly or indirectly owning, operating or managing the Beverly Twin Theatres, and the Eastridge Cinema until after March 31, 1987." A motion to dismiss pursuant to Rules 9(e) and 12(b)(6), W.R.C.P., was filed by Commonwealth on May 24, 1984, asserting res judicata or collateral estoppel as bars to the bringing of this second suit. A hearing on the matter was held on July 19, 1984, and the court entered an order dismissing the second complaint

on August 9, 1984. A notice of appeal was filed by Rialto on August 17, 1984.

### No. 84–162

Our initial inquiry is whether the district court erred in dismissing count two of Rialto's original complaint which sought to enjoin Commonwealth from opening the Eastridge Cinema. In his decision letter denying Rialto's motion for reconsideration of injunctive relief, the district judge provided the following insight into his justification for dismissal of that part of the complaint:

" * * * The Court did not rule that there was an adequate remedy at law; it determined that plaintiff had not shown that there was no adequate remedy. I think this is simply a way of saying that the burden is plaintiff's, and in this and in numerous other cases an applicant for injunction does not carry that burden."

Although authorized by statute, § 1–28–101 et seq., W.S.1977, an action for injunction is a form of equitable relief which is not granted as a matter of right, but the issuance of which is addressed to the court's equitable discretion. *Kincheloe v. Milatzo*, Wyo., 678 P.2d 855 (1984); *Lee v. Brown*, Wyo., 357 P.2d 1106 (1960); *Alaska Development Co. v. Brannan*, 40 Wyo. 106, 275 P. 115 (1929). This court has previously noted the extraordinary character of the remedy of injunction, and has stated that a court must proceed with caution and deliberation before exercising the remedy. *Simpson v. Petroleum, Inc.*, Wyo., 548 P.2d 1 (1976); *Lee v. Brown*, supra, 357 P.2d at 1110–1111. One of the prerequisites to the issuance of an injunction is that there is no adequate remedy at law. *Crawford v. City of Sheridan*, Wyo., 392 P.2d 519 (1964); *Miller v. Hagie*, 59 Wyo. 383, 140 P.2d 746 (1943); *Ward v. Rees*, 11 Wyo. 459, 72 P. 581 (1903). Specifically, it has been noted that where an award of monetary damages would provide adequate compensation, injunctive relief is inappropriate. *Lee v. Brown*, supra, 357 P.2d at 1111; *Holly Sugar Corporation v.*

---

**2.** Rule 2.01, W.R.A.P., provides in part:

"A notice of appeal, in a civil or criminal case, filed prematurely shall be treated as filed on

the same day as entry of judgment or final order, provided it complies with Rule 2.02, W.R.A.P."

*Goshen County Cooperative Beet Growers Association,* 725 F.2d 564 (10th Cir. 1984). This does not, however, prevent the issuance of injunctive relief to restrain the breach of a contract where the other requisites for the exercise of equitable jurisdiction, including the inadequacy of a remedy at law, are present. *Cody Community Television Corp. v. Way,* Wyo., 356 P.2d 1113 (1960); 42 Am.Jur.2d Injunctions § 87, pp. 835–836. Among circumstances in which injunctive relief may be appropriate are where such action may be necessary to prevent a multiplicity of suits, or where the defendant is insolvent or financially unable to respond in damages. 42 Am.Jur.2d Injunctions § 93, p. 843.

In *Reno Livestock Corporation v. Sun Oil Company (Delaware),* Wyo., 638 P.2d 147, 153 (1981), we noted the preventative nature of injunctive relief:

" * * * It would be foolhardy to require that before the granting of an injunction that there be actual physical violence in order to constitute the threat of interference with another's right enforceable by way of the extraordinary remedy of injunction. One does not have to await the consummation of threatened injury to obtain preventative relief. Injunctive relief is designed not to deal with past violations, but to avoid future wrongs. If injury is certainly impending, that is enough. Prevention of impending future injury is a recognized function of a court of equity. *Carter v. Carter Coal Company,* 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160 (1936); *Swift & Co. v. United States,* 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928). * * * "

Procedurally, suits for injunctive relief are civil suits and are governed by the same rules of procedure. *Weber v. Johnston Fuel Liners, Inc.,* Wyo., 519 P.2d 972 (1974). In the present case, the district court granted a motion pursuant to Rule 12(b)(6), W.R.C.P., on the basis that Rialto failed to state a cause of action upon which relief could be granted. Recently, this court reiterated the standards under which we review the grant of a motion to dismiss:

" 'When considering a motion to dismiss a complaint, pursuant to Rule 12(b)(6), W.R.C.P., on the ground that it fails to state a claim on which relief can be granted, the facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to the plaintiffs. *State Highway Commission v. Bourne,* Wyo.1967, 425 P.2d 59. We therefore treat as true all the allegations of plaintiffs' complaint.' " *Allen v. Safeway Stores, Inc.,* Wyo., 699 P.2d 277, 281 (1985), quoting from *Moxley v. Laramie Builders, Inc.,* Wyo., 600 P.2d 733, 734 (1979).

In addition, in passing upon the sufficiency of the allegations of Rialto's complaint in this instance, we bear in mind the admonition of this court in *Tri-County Electric Association, Inc. v. City of Gillette,* Wyo., 525 P.2d 3, 10 (1974), wherein it stated:

"The extraordinary character of the injunction remedy requires that the complaint clearly set out all the facts necessary to establish such right * * *."

It is insufficient, however, to merely state by means of conclusion that irreparable injury will ensue if relief is not granted or that there is no adequate remedy at law. The complaint must allege a set of facts which, if proven, would provide a proper basis for the intervention of a court of equity. 42 Am.Jur.2d Injunctions §§ 269–270, pp. 1062–1065.

Examining Rialto's complaint in light of the foregoing principles, we conclude that the district court did not err in dismissing the claim for injunctive relief. The allegations of the complaint establish the existence of an agreement between the parties which Commonwealth intended to breach by opening a new theatre in the Eastridge Mall complex, which would result in damages to Rialto in the form of lost rentals, receipts and other nonspecified damages. Rialto's complaint lacks allegations of facts justifying its conclusions that it has no adequate remedy at law, and failure to grant the injunction would result in its suffering irreparable injury. In par-

ticular, the complaint fails to state why an action at law for recovery of monetary damages, which is all that is pleaded, would be an insufficient remedy. It may well be that it is impossible to adequately measure or prove such damages or that an injunction would be necessary to avoid a multiplicity of suits; however, these are matters which must be capable of being established based on the facts pled in the complaint.

### No. 84–163

At the conclusion of trial on Rialto's initial complaint, the jury returned a verdict which found Commonwealth had violated the terms of the lease agreement with Rialto, but, much to Rialto's dismay, assessed only nominal damages of one dollar. Rialto argues that the jury failed to follow the court's instructions in establishing the amount of damages. Commonwealth has also appealed, arguing that the trial court erred in not ruling as a matter of law that the paragraph of the lease relied upon by Rialto is unenforceable. That paragraph provides as follows:

"14. Lessor and Lessee respectively warrant to each other that neither they nor their respective officers, directors or stockholders shall, during the term hereof, enter directly or indirectly into the business of owning, operating or managing theatres within twenty-five (25) miles of the city limits of Casper, Wyoming, without the prior written consent of the other. In the event either Lessor or Lessee desires or deems it necessary to build another theatre in Casper, Wyoming, then it is agreed that Lessor and Lessee will enter into an agreement to construct the same and will enter into a lease thereof."

We agree with Commonwealth, and, therefore, will not address the issue raised by Rialto at length. Briefly, the record reflects that Rialto did not object to the court's instructions to the jury, including Instruction No. 18, which provides:

"If the jury finds, under all of the instructions given, that Commonwealth breached the Lease and Rialto is entitled to a verdict but that it would be speculative for you to determine the amount of damages, then you can award Rialto only nominal damages in the amount of one dollar in recognition of Rialto's right and the technical infraction thereof by Commonwealth."

The jury's verdict is consistent with the quoted instruction. In addition, the record does not reflect that Rialto properly preserved this issue for our review by raising a timely objection to the jury's verdict. Our rule is that such objection is required when the verdict is perceived as being inconsistent. *Goggins v. Harwood*, Wyo., 704 P.2d 1282 (1985); *DeWitty v. Decker*, Wyo., 383 P.2d 734 (1963).

Commonwealth argues that the portion of the agreement relied upon by Rialto is unenforceable for the reason that the terms of their agreement are not sufficiently definite. In *Action Ads, Inc. v. Judes*, Wyo., 671 P.2d 309, 310–311 (1983), this court noted that:

"We perceive the initial question to be whether the contract, as established by plaintiff-appellee, is sufficiently definite to permit the court to determine with reasonable certainty the extent of the promissor's contractual duties. Where the terms of a contract are not sufficiently definite to permit this initial determination, the court lacks the information necessary to rule on the issues of breach of contract, damages, or duty to mitigate damages."

By its clear and unambiguous language, this portion of the lease agreement is merely an agreement to agree in the future. While the parties to such an agreement may perceive that a binding obligation is created by this type of agreement, the court is incapable of ordering enforcement as it cannot supply the terms of agreement for the parties. *Adobe Oil & Gas Corporation v. Getter Trucking, Inc.*, Wyo., 676 P.2d 560 (1984). In this case the parties' agreement provides no guidance as to the terms which are to be enforced. Unless the essential terms of such a future agreement are defined with reasonable cer-

tainty, there is no contract for the court to enforce. *Western Airlines, Inc. v. Lathrop Company,* Alaska, 499 P.2d 1013 (1972); *Coleman Engineering Company v. North American Aviation,* 65 Cal.2d 396, 55 Cal.Rptr. 1, 420 P.2d 713 (1966); *Page & Wirtz Construction Co. v. Van Doran Bri-Tico Co.,* Tex.Civ.App., 432 S.W.2d 731 (1968); *Witt v. Realist, Inc.,* 18 Wis.2d 282, 118 N.W.2d 85 (1962); 1 Corbin on Contracts § 95, p. 397 (1963); and 17 Am.Jur.2d Contracts § 26, p. 362. We conclude that the trial court erred in not granting Commonwealth's motion for directed verdict and allowing the matter to go to the jury.

### No. 84–233

The final issue to be addressed in these appeals concerns the propriety of the district court's dismissal of the second complaint filed by Rialto some 12 days after trial on its original complaint. This second complaint requested that Commonwealth be enjoined

> " * * * from directly or indirectly owning, operating or managing the Beverly Twin Theatres, and the Eastridge Cinema until after March 31, 1987, plus recovery of costs, and such other and further relief as the Court deems just and equitable."

The district court in its decision letter dated August 2, 1984, noted that in granting Commonwealth's motion to dismiss, it felt that "both res judicata, the more directly, and collateral estoppel apply here to act as bars." In addition, in apparent reference to Rialto's argument that it was precluded from presenting the entirety of its claims for damages in the previous case as those damages had not yet accrued, the court noted that Rialto's remedy would be to appeal.[3] The order dismissing Rialto's second complaint was entered August 9, 1984 on the grounds stated in the decision letter.

As argued in the district court, Rialto urges in its appeal that the doctrines of res judicata and collateral estoppel do not act as a bar to the bringing of a second complaint based upon violations of the same lease involved in the prior suit for the reasons that this was the first time Rialto requested injunctive relief with respect to the Beverly Twin Theatres, that there were new and separate damages which had not accrued as of the time of trial in the first action which give rise to new causes of action, and that the issues involved in the prior suit did not include those related to current damages suffered by Rialto as a result of continued operation of the two theatres by Commonwealth. Rialto argues that each month Commonwealth does business in the other theatres this competition causes a decrease in the amount of gross receipts of the theatre properties owned by Rialto covered by the lease, resulting in Rialto being damaged anew each month as the amount of rents under the lease are diminished. In essence, Rialto argues that an additional, new breach of lease accrues each month when the amount of rent received by it is decreased as a result of operations of the other theatres.

The rules of law applicable in this appeal were summarized by this court in *Delgue v. Curutchet,* Wyo., 677 P.2d 208, 213–214 (1984):

> "In this jurisdiction the doctrine of res judicata and the related doctrine of collateral estoppel have been recognized in a number of decisions over the years. *Barrett v. Town of Guernsey,* Wyo., 652 P.2d 395 (1982); *Roush v. Roush,* Wyo., 589 P.2d 841 (1979); *Bard Ranch Company v. Weber,* Wyo., 557 P.2d 722 (1976); *Blount v. City of Laramie,* Wyo., 510 P.2d 294 (1973); *Knight v. Boner,* Wyo., 459 P.2d 205 (1969); *Rubeling v. Rubeling,* Wyo., 406 P.2d 283 (1965); *Lee v. Brown,* Wyo., 357 P.2d 1106 (1960); *Willis v. Willis,* 48 Wyo. 403, 49 P.2d 670 (1935), reh. denied 49 Wyo. 296, 54 P.2d 814 (1936); and *Cook v. Elmore,* 27 Wyo. 163, 192 P. 824

---

**3.** We note that at the time of pretrial on its initial complaint, Rialto sought and was granted leave to amend its complaint to pray for additional damages resulting from the opening of the Eastridge Cinema before trial.

(1920). See also *Price v. Bonnifield*, 2 Wyo. 80 (1878). As recognized in this state, these doctrines incorporate a universal precept of common-law jurisprudence to the effect that a 'right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies.' *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), quoting from *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). These doctrines are founded upon the interest held by society in having differences conclusively resolved in a single action thereby avoiding the vexation and expense which are associated with piecemeal litigation. The necessity for sustaining this social interest is the justification for the doctrines of res judicata and collateral estoppel. *Montana v. United States*, supra, 440 U.S. at 153–154, 99 S.Ct. at 973–74; *Barrett v. Town of Guernsey*, supra, 652 P.2d at 398–399; and *Rubeling v. Rubeling*, supra, 406 P.2d at 284. These doctrines, which inhibit the relitigation of claims or issues upon which there has been a full and fair opportunity to litigate in a court of competent jurisdiction, promote the reliance by citizens of the state upon courts to settle their disputes and they conserve judicial resources.

"The interest served by both doctrines is essentially the same, but courts, including this court, have been careful to distinguish between the two. Res judicata can be described generally as that rule which precludes the presentation by parties or those in privity with them of the same claim that was resolved by an earlier judgment. *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877); *Bard Ranch Company v. Weber*, supra, 557 P.2d at 727; *Willis v. Willis*, supra, 49 P.2d at 673; and Restatement (Second) of Judgments, § 17 (1982). The effect of collateral estoppel is that of preventing relitigation of issues which were involved actually and necessarily in the prior action between the same parties. *Roush v. Roush*, supra, 589 P.2d at 843; *Bard Ranch Company v. Weber*, supra, 557 P.2d at 726–727; *Willis v. Willis*, supra, 49 P.2d at 673–677; and Restatement (Second) of Judgments, § 27 (1982)."

See also *CLS v. CLJ*, Wyo., 693 P.2d 774 (1985); *Lane Company v. Busch Development, Inc.*, Wyo., 662 P.2d 419 (1983).

In presenting this appeal, Rialto relies primarily upon our decision in *Bard Ranch Company v. Weber*, Wyo., 557 P.2d 722 (1976). In that case, this court rejected an argument that a judgment in an earlier suit between the parties establishing the existence of private roadway precluded the bringing of suit to establish any other claims which might have been presented in the earlier litigation. Rialto argues that only those facts and matters involved in a prior suit which were actually or necessarily adjudicated are conclusively established under the principle of res judicata. In *Bard Ranch Company v. Weber*, supra, 557 P.2d at 727, we relied upon two decisions of the Supreme Court of the United States in which the distinctions between the doctrines of res judicata and collateral estoppel are discussed. *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877); *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948). Rialto's argument in this case reflects a basic misunderstanding of those distinctions. Summarized, res judicata is a doctrine precluding the bringing of further claims by parties or their privities based on the same cause of action. Collateral estoppel, in contrast, involves the preclusion of issues which were actually and necessarily decided in prior litigation on a different claim or cause of action between the parties. *Delgue v. Curutchet*, supra; *Montana v. United States*, 440 U.S. 147, 153–154, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

Closely related to the doctrine of res judicata is the rule against splitting causes of action. *Hurst v. Davis*, Wyo., 386 P.2d 943 (1963).

" * * * The general rule against splitting a cause of action is that a single wrong gives rise to one cause of action for which only one suit may be maintained, however numerous the elements of damages resulting therefrom." *Lane Company v. Busch Development, Inc.,* supra, 662 P.2d [419] at 421.

Like res judicata and collateral estoppel, one of the reasons for the rule is that a party should not be put to the trouble and expense of defending against alleged liability in several suits which could and should be determined in a single action. *Lane Company v. Busch Development, Inc.,* supra; *Davis v. Davis,* 56 Wyo. 524, 111 P.2d 124, 138 A.L.R. 336 (1941); *Hennessy v. Chicago, B. & Q. Ry. Co.,* 24 Wyo. 305, 157 P. 698 (1916). In addition, the rule promotes judicial economy. *Lane Company v. Busch Development, Inc.,* supra; *Atlas Realty Co. v. Rowray,* 51 Wyo. 318, 65 P.2d 1122 (1937).

This court has defined a "cause of action" as the fact or combination of facts which gives rise to a "suit," the latter being a proceeding to enforce a right. *Lane Company v. Busch Development, Inc.,* supra, 662 P.2d at 421; *Duke v. Housen,* Wyo., 589 P.2d 334, 341, cert. denied 444 U.S. 863, 100 S.Ct. 132, 62 L.Ed.2d 86 (1979). See also *Bliler v. Boswell,* 9 Wyo. 57, 59 P. 798, 803 (1900) ("A cause of action is defined as matter for which an action may be brought"). As noted in *Lane Company v. Busch Development, Inc.,* supra, 662 P.2d at 421:

"No precise rule has been laid down for determining what makes a whole cause of action. Each case is decided on its particular facts."

█ In determining what constitutes a cause of action for purposes of res judicata, we adopt the approach of the Restatement of the Law (Second) of Judgments § 24, p. 196 (1982), which provides:

"§ 24. Dimensions of 'Claim' for Purposes of Merger or Bar—General Rule Concerning 'Splitting'

"(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar (see §§ 18, 19), the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

"(2) What factual grouping constitutes a 'transaction', and what groupings constitute a 'series', are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

█ We hold that the principles of res judicata act as a bar to Rialto's second complaint in this matter even though the remedies sought in the second action may not have been part of the first suit. Restatement of the Law (Second) of Judgments § 25(2), p. 209 (1982). Each complaint involves the same lease agreement, the same theatres and the same basic factual circumstances which are alleged to give rise to Rialto's right to maintain an action against Commonwealth. The following is particularly applicable to the claims made by Rialto in the present appeal:

"f. *Successive actions for different remedies.* As the result of a single transaction or a connected series of transactions giving rise to a unitary claim, the plaintiff may be entitled to a number of alternative or cumulative remedies or forms of relief against the defendant. In a modern system of procedure it is ordinarily open to the plaintiff to pursue in one action all the possible remedies whether or not consistent, whether alternative or cumulative, and whether of the types historically called legal or equitable.

"Therefore it is fair to hold that after judgment for or against the plaintiff, the claim is ordinarily exhausted so that the plaintiff is precluded from seeking any other remedies deriving from the same grouping of facts." Restatement of the

Law (Second) of Judgments § 25, comment f, p. 214 (1982).

We are not persuaded by Rialto's argument that its damages at the time of filing the second complaint differed from those present at the time of trial in the first action. In *Iowa National Mutual Insurance Company v. Huntley*, 78 Wyo. 380, 328 P.2d 569 (1958), this court rejected a similar argument, noting that, where an automobile accident caused both property damage and personal injury, a single cause of action ensued, and plaintiff was required to prove all his damages in a single suit. This rule applies with equal force to the claims of Rialto. If Rialto was precluded from proving all its damages in the initial suit, its remedy was to appeal, not file another complaint for recovery of those damages.

## CONCLUSION

The district court is affirmed with respect to Case No. 84–162 and Case No. 84–233; Case No. 84–163 is remanded to the district court for entry of an order vacating the judgment and dismissing Rialto's claim for monetary damages for breach of the lease.

THOMAS, Chief Justice, specially concurring.

I have no real quarrel with anything that is said in the opinion of the court in this case, but I would reverse Case No. 84–163 for an additional reason. As this agreement is described in the majority opinion, particularly paragraph 14 thereof, I am satisfied that it constitutes an effort on the part of these parties to create a monopoly in the movie theatre business in the Casper, Wyoming area.

Article 1, § 30 of the Constitution of the State of Wyoming provides in pertinent part:

8v"Perpetuities and monopolies are contrary to the genius of a free state, and shall not be allowed. * * * "

Article 10, § 8 of the Constitution of the State of Wyoming provides:

8v"There shall be no consolidation or combination of corporations of any kind whatever to prevent competition, to control or influence productions or prices thereof, or in any other manner to interfere with the public good and general welfare."

The legislature of the state of Wyoming has implemented these constitutional provisions in § 40–4–101, W.S.1977, by providing:

"Any person, firm, or corporation, foreign or domestic, doing business in the state of Wyoming and engaged in the production, manufacture, sale or distribution of any commodity in general use, that shall make, enter into, form or be a party to, any plan, agreement, consolidation or accommodation of any kind whatsoever to prevent competition, or to control or influence production or prices thereof, * * * shall be deemed guilty of unfair discrimination; * * * "

A violation of the provisions of that section is punishable by both a fine and imprisonment.

In both the provisions of the constitution and in the statute, the state of Wyoming has articulated a public policy against the making of agreements such as the one which is the subject of this case. While we recently have said in a public policy context that courts unanimously recognize the right to contract freely, and that we will not set aside a contract on the basis of public policy unless the policy is well settled, unambiguous and not in conflict with any other equally or more compelling public policy (*Sinclair Oil Corp. v. Columbia Cas. Co.*, Wyo., 682 P.2d 975 (1984) I am convinced that the public policy position of the state of Wyoming with respect to contracts in restraint of trade and designed to structure a monopoly is clear. The appropriate rule then is capsulized in *Tate v. Mountain States Tel. & Tel. Co.*, Wyo., 647 P.2d 58, 61 (1982):

"Generally, a contract which is contrary to public policy will not be recognized by the court, and the parties to such contract will be left as the court finds them.

*Owens v. Capri,* 65 Wyo. 325, 202 P.2d 174 (1949); and *Claus v. Farmers & Stockgrowers State Bank,* 51 Wyo. 45, 63 P.2d 781 (1936)."

Applying this rule I would resolve this case with respect to all issues by holding very simply that the contract involved is one which is contrary to public policy and none of the parties are entitled to seek relief from the courts of this state.