**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 23, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TRUE OIL COMPANY, a Wyoming
partnership,

> Plaintiff - Appellant,

v.

MID-CONTINENT CASUALTY
COMPANY, an Oklahoma corporation,

> Defendant - Appellee.

No. 05-8028
(D. Ct. No. 02-CV-1024-J)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **PORFILIO**, Circuit Judge, and **JOHNSON**,
District Judge[†].

This appeal arises out of a diversity action filed in the District of Wyoming in

which Plaintiff-Appellant True Oil Company ("True Oil") brings claims against

Defendant-Appellee Mid-Continent Casualty Company ("Mid-Continent") for breach of

insurance contract, breach of the covenant of good faith and fair dealing, and bad faith

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[†]Honorable William P. Johnson, District Judge for the District of New Mexico,
sitting by designation.

arising from Mid-Continent's failure to defend True Oil and pay for its liability resulting from the injuries of a worker at one of True Oil's wells. On cross-motions for summary judgment, the District Court granted summary judgment in favor of Mid-Continent. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

In 1969, in recognition of the ultrahazardous nature of work in the mineral industry, Wyoming adopted a law to prohibit the contractual shifting of liability for a party's own negligence in connection with certain contracts relating to oil, gas, or water wells and mineral mines. Wyoming's anti-indemnity statute provides:

> (a) All agreements, covenants or promises contained in, collateral to or affecting any agreement pertaining to any well for oil, gas or water, or mine for any mineral, which purport to indemnify the indemnitee against loss or liability for damages for:
>     (i) Death or bodily injury to persons;
>     (ii) Injury to property; or
>     (iii) Any other loss, damage, or expense arising under either (i) or (ii) from:
>         (A) The sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee or any independent contractor who is directly responsible to such indemnitee; or
>         (B) From any accident which occurs in operations carried on at the direction or under the supervision of the indemnitee or an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee,
> are against public policy and are void and unenforceable to the extent that such contract of indemnity by its terms purports to relieve the indemnitee from loss or liability for his own negligence. This provision shall not affect

the validity of any insurance contract or any benefit conferred by the Worker's Compensation Law . . . of this state.

Wyo. Stat. Ann. § 30-1-131. The statute was likely a response to "the safety issues raised by contracts which indemnify the indemnities from their own negligence which could have the effect of insulating persons responsible for such work from the consequences of unsafe practices in the workplace." *Union Pac. Res. Co. v. Dolenc*, 86 P.3d 1287, 1292 (Wyo. 2004).

In May 2001, True Oil, an owner and operator of oil and gas wells throughout the United States, contracted with Pennant Service Company ("Pennant") to perform work on one of its wells in Wyoming. The two companies executed a Master Service Contract ("MSC") that includes an indemnity provision—despite the fact that Wyoming law renders such agreements unenforceable—whereby Pennant agrees to indemnify and hold True Oil harmless for True Oil's own negligence arising out of the work to be performed by Pennant.[1] The MSC also contains an insurance provision which requires Pennant to obtain insurance and name True Oil as "an additional insured" on the contract. These two provisions state in relevant part:

> 6. Indemnification. To the fullest extent permitted by law, [Pennant] shall and does agree to indemnify, protect, defend and hold harmless [True Oil], its affiliated companies, their joint owners, officers, directors, shareholders, employees and agents (collectively "Indemnitee") from and against all claims, damages, . . . even if these liabilities are caused in part by the

---

[1]It is undisputed that the work to be performed by Pennant on True Oil's well in Wyoming is an "agreement pertaining to any oil well" as used in § 30-1-131.

negligence or omission of any Indemnitee.

7. <u>Insurance</u>. (a) At any and all times during the terms of this Agreement, [Pennant] agrees to carry insurance of the types and in the minimum amounts as set forth on Exhibit "B" attached hereto, incorporated by reference . . . . Such coverage shall not substitute for or limit in any way the indemnification given above.  [Pennant] further agrees to have its insurance carrier furnish [True Oil], on the form of Insurance Certificate attached hereto as Exhibit "C" and incorporated herein by reference . . . evidence of insurance coverage complying with the requirements which are set forth on Exhibit "B" hereto, and specifically setting forth the additional insured status . . .

(b) . . . [Pennant] agrees to have its insurance carrier furnish [True Oil] a certificate or certificates evidencing insurance coverage in accordance with the above requirements.

(c) [Pennant] will promptly, following the execution of this Contract, obtain from its insurers a waiver of subrogation against [True Oil] for all of the insurance policies which are reflected on the Certificate of Insurance which is attached hereto as Exhibit "C," and an endorsement for all Comprehensive General Liability and Excess Liability policies reflected on Exhibit "C" naming [True Oil] as an additional insured.

Subsequent to executing the MSC, True Oil requested and obtained two certificates of insurance from Pennant's insurance agent, Freburg & Company, Inc. ("Freburg").  Freburg is an agent of Mid-Continent and has authority to solicit and deliver insurance policies, certificates, and endorsements on behalf of Mid-Continent.  One of the certificates, termed an "ACORD Certificate of Liability Insurance,"[2] provides that it "is issued as a matter of information only and confers no rights upon the certificate holder" and that it "does not amend, extend, or alter the coverage afforded by the policies."  It

_____

[2]An ACORD Certificate of Insurance is a standard form widely used in the insurance industry. *See Am. Cas. Co. of Reading, Penn. v. Krieger*, 181 F.3d 1113, 1122 (9th Cir. 1999).

- 4 -

also states that True Oil is the certificate holder and is named as an "Additional Insured . . . when required by an insured contract." The second certificate is True Oil's own certificate of insurance. It was signed by an agent of Freburg and provides that True Oil is included as an "Additional Insured" on Pennant's Commercial General Liability ("CGL") policy issued by Mid-Continent.

In October 2001, one of Pennant's employees was injured while performing work on the well for True Oil. The employee sued True Oil, alleging that it negligently supervised the project and failed to implement safety precautions properly. True Oil made a demand upon Mid-Continent, seeking defense and indemnification in the action. Several months later, Mid-Continent denied True Oil's request because, in its view, the indemnity provision of the MSC was void as violative of public policy under Wyo. Stat. Ann. § 30-1-131 and therefore True Oil was not covered under Pennant's CGL policy.

True Oil filed suit against Mid-Continent for breach of contract, bad faith, and breach of the covenant of good faith and fair dealing, and sought declaratory relief and compensatory and punitive damages. True Oil filed a motion for partial summary judgment on its status as an "additional insured" under the CGL policy and on Mid-Continent's duty to defend. Mid-Continent filed a cross-motion for summary judgment on all claims. The District Court denied True Oil's motion for partial summary judgment and granted Mid-Continent's motion. This appeal followed.

## II. DISCUSSION

A.     Standard of Review

Pursuant to Fed. R. Civ. P. 56(c), we review the entry of summary judgment de novo and apply the same legal standards as the district court.  *Dunbar v. Jackson Hole Mountain Resort Corp.*, 392 F.3d 1145, 1147 (10th Cir. 2004).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Dunbar*, 392 F.3d at 1148.  Finally, we note that Wyoming law governs this dispute.  *See id.*

B.     Analysis

As an initial matter, it is important that we emphasize what is not at issue in this case.  True Oil has not sued Pennant.  Thus, we are not called upon to interpret the exact contours of the MSC, which appears to obligate Pennant to obtain insurance in favor of True Oil.  The only issue in this case is whether Pennant's CGL policy provides coverage for True Oil's negligence and what effect, if any, Wyo. Stat. Ann. § 30-1-131 has on the policy.

An insurance policy is a contract between the insurer and the insured.  In Wyoming, a court's basic purpose in interpreting an insurance policy, as with other types of contracts, is to determine the parties' true intent.  *O'Donnell v. Blue Cross Blue Shield*

*of Wyo.*, 76 P.3d 308, 312 (Wyo. 2003).  Intent is determined from the language used in the policy, and if the policy "is clear and unambiguous, our inquiry is limited to the four corners of the document." *Id.*  The terms of an unambiguous contract are given their ordinary and usual meaning. *Id.*  A court need only resort to rules of construction when it decides, as a matter of law, that a contract is ambiguous. *Id.*

The CGL policy provides insurance coverage to Pennant for liability resulting from certain bodily injuries or property damage.  True Oil is not named directly in the CGL policy.  The policy contains a blanket endorsement, however, that True Oil contends makes it directly insured.  The endorsement automatically extends coverage to "any person or organization . . . whom [Pennant] has agreed by written '*insured contract*' to designate as an additional insured," without requiring that the person or organization be expressly named in the policy.[3]  The policy defines an "insured contract"[4] as:

> That part of any other contract or agreement pertaining to [Pennant's] business . . . under which [Pennant] assume[s] the tort liability of another party to pay for "bodily injury" or "property damages" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Accordingly, the plain language of Pennant's CGL policy with Mid-Continent

---

[3]Blanket endorsements are added to policies as a way to automatically provide coverage for companies with whom the named insured does business without having to execute additional contracts and without having to name the additional insured explicitly in the policy.

[4]The CGL policy includes several other types of agreements in its definition of "insured contract," but none are applicable to this case.

states that a necessary prerequisite for True Oil to be considered an additional insured is that there be an "insured contract" between Pennant and True Oil. It is also plain that an insured contract within the meaning of the policy is an indemnification agreement in which Pennant agrees to hold another party, such as True Oil, harmless for that party's tort liabilities.[5] This, in turn, refers to a provision like section 6 of the MSC in which Pennant "agree[s] to indemnify, protect, defend and hold [True Oil] harmless . . . from and against all claims, damages, . . . even if these liabilities are caused in part by the negligence or omission of any indemnitee." Section 6 of the MSC, however, is unquestionably voided by Wyo. Stat. Ann. § 30-1-131. As such, that section does not constitute an "insured contract" between Pennant and True Oil. Furthermore, nothing in section 7 can be construed as an "insured contract" within the meaning of the CGL policy. Although it states that Pennant must procure "additional insured status" for True Oil, that section, which is separate and distinct from the indemnification provision, does not require Pennant to pay for "bodily injury" or "property damages" to a third person that otherwise would be True Oil's responsibility to pay. Similarly, "Exhibit B"—which section 7 incorporates by reference—describes the minimum level of insurance coverage

---

[5]This reading of the meaning of "insured contract" is bolstered by exceptions to the meaning of insured contract. The policy provides that an insured contract does not include "that part of a contract or agreement: (1) [t]hat indemnifies a railroad for 'bodily injury' or 'property damage[;]'. . . (2) [t]hat indemnifies an architect, engineer or surveyor for injury or damage . . . ." Accordingly, an "insured contract" must generally include indemnification agreements, since it specifically excludes only certain types of such agreements.

that Pennant must maintain. Exhibit B also requires Pennant to obtain an "[e]ndorsement naming the 'True Companies' as an additional insured," but, again, nothing in that document suggests that Pennant has undertaken an assumption of True Oil's tort liabilities. True Oil points to no other provision of the MSC that could arguably create an "insured contract." Because there is no valid "insured contract" between Pennant and True Oil, True Oil has not attained additional insured status under Pennant's CGL policy.[6]

The two certificates of insurance True Oil obtained as evidence of its additional insured status do not create a genuine issue of fact on this issue. The ACORD certificate, for example, explicitly provides that it "does not amend, extend, or alter the coverage afforded by the policies." When a certificate contains this type of disclaimer, "any conflict between the terms of the certificate and the master policy results in the terms of the master policy being applied to determine the rights and obligations of the parties." *Poling v. N. Am. Life & Cas. Co.*, 593 P.2d 568, 572 (Wyo. 1979). Thus, because True Oil was not made an additional insured under the policy, a contrary certificate of

---

[6]The District Court assumed that True Oil was an additional insured under the CGL policy but held that the insurance savings provision of the anti-indemnity statute, *see* Wyo. Stat. Ann. § 30-1-131 (stating that the anti-indemnity provision "shall not affect the validity of any insurance contract"), "does not create an obligation to insure where public policy specifically precludes enforcement of such an agreement to insure and indemnify for one's own negligence." It therefore concluded that, as a matter of public policy, True Oil was not entitled to coverage under the CGL policy. Because we conclude the insurance policy is unambiguous and does not provide coverage to True Oil, we do not reach that question. *See Green v. New Mexico*, 420 F.3d 1189, 1197 n.7 (10th Cir. 2005) (an appellate court may affirm for any reason supported by the record).

insurance does not extend coverage. We also note that were it not for the operation of Wyo. Stat. Ann. § 30-1-131, an insured contract would exist between Pennant and True Oil—and, accordingly, True Oil would be an additional insured on Pennant's CGL policy with Mid-Continent. Accordingly, the certificates' declaration that True Oil is indeed an additional insured is consistent with the parties' (including Freburg's) belief as to that issue.

For the same reasons, the deposition testimony of William Freburg, the owner of Freburg & Company, and Phil Pollard, the Account Manager for Freburg who provided True Oil with its certificates of insurance, is not sufficient to raise a genuine issue of material fact. Both men testified that they believed True Oil was an additional insured under the CGL policy. But neither of them testified as to what their belief of the meaning of "insured contract" was. They may have believed that True Oil was an additional insured either because they erroneously believed that section 6 was valid and enforceable or because they erroneously believed that an "insured contract" included the type of insurance-shifting agreement found in section 7. In any event, because the contract language is clear and unambiguous, "the language used in the contract expresses and controls the intent of the parties" and parol evidence as to the meaning of the terms is inadmissible. *Kirkwood v. CUNA Mut. Ins. Soc.*, 937 P.2d 206, 208–09 (Wyo. 1997).

Finally, we acknowledge that the MSC appears to require Pennant to obtain insurance coverage that extends to True Oil. It must be emphasized, however, that we

- 10 -

need not decide here whether Pennant or Freburg was obligated to obtain that coverage for True Oil and failed to do so. We are only called upon to decide whether True Oil should be denied coverage for its tort liability under the CGL policy between Pennant and Mid-Continent as an additional insured because the MSC between Pennant and True Oil does not constitute an "insured contract" within the meaning of that policy. The evidence presented by True Oil might have some bearing on breach of contract, promissory estoppel, or reliance claims it could have brought against Pennant—as opposed to Mid-Continent—but in this case, such evidence is irrelevant where the CGL policy is clear that True Oil can only be an "additional insured" under the policy's blanket endorsement when there is an "insured contract" between True Oil and Pennant.

## III. CONCLUSION

We conclude that no "insured contract" within the meaning of the CGL policy existed between Pennant and True Oil. As such, True Oil was not an additional insured under the policy and, accordingly, Mid-Continent was not obligated to provide for True Oil's defense or other liabilities resulting from the Pennant employee's injury. We therefore AFFIRM the District Court's entry of summary judgment in favor of Mid-Continent.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge