FILED
United States Court of Appeals
Tenth Circuit

September 18, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

MID-CONTINENT CASUALTY
COMPANY,

      Plaintiff - Appellant,

v.

TRUE OIL COMPANY, a Wyoming
partnership,

      Defendant - Appellee.

No. 13-8006

---

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 1:05-CV-00258-ABJ)**

---

Christopher W. Martin of Martin, Disiere, Jefferson & Wisdom, L.L.P., Houston, Texas (Patrick T. Holscher of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming, on the briefs), for Plaintiff-Appellant.

Scott P. Klosterman (Patrick J. Murphy with him on the brief) of Williams, Porter, Day & Neville, P.C., Casper, Wyoming, for Defendant-Appellee.

---

Before **TYMKOVICH**, **SEYMOUR**, and **GORSUCH**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Mid-Continent Casualty Company (Mid-Continent) brought this declaratory judgment action to ascertain the applicability to True Oil Company (True Oil) of Mid-Continent's commercial general liability (CGL) policy issued to Pennant Service Company (Pennant). The district court granted summary judgment to True Oil, determining Mid-Continent breached its duty to defend and indemnify True Oil in the underlying action against it by Pennant's employee. As damages, the court awarded True Oil the amount it paid to settle the underlying suit and the attorney fees and costs incurred in defending itself. Mid-Continent appeals from the district court's judgment. We affirm.

**I**

In 2001, True Oil, an owner and operator of oil and gas wells, entered into a master service contract (MSC) with Pennant for work on a well in Wyoming. The MSC included a provision whereby Pennant agreed to indemnify True Oil "from and against all claims, damages, losses, . . . causes of action, suits, judgments, penalties, fines and expenses, including attorney fees, of any nature, kind or description whatsoever" resulting from either Pennant or True Oil's negligence. Aplt. App., vol. 1 at 43-44.

Pennant has a CGL policy with Mid-Continent. Under the policy, Mid-Continent agreed to insure Pennant against damages because of bodily injury "[a]ssumed in a contract or agreement that is an 'insured contract,'" including

-2-

"reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured" as long as "(a) [l]iability to such party for, or for the cost of, that party's defense has also been assumed in the same 'insured contract'; and (b) [s]uch attorney fees and litigation expenses are for defense of that party against a civil . . . proceeding in which damages to which this insurance applies are alleged." *Id.* at 24-25 (noting exception to coverage exclusion).

In July 2001, Christopher Van Norman, an employee of Pennant, was injured in an accident at True Oil's well. On October 26, 2001, Mr. Van Norman filed a negligence suit against True Oil in Wyoming state court.[1] In accordance with the MSC's indemnity provision, counsel for True Oil wrote to Pennant on November 20, requesting indemnification for its defense costs, attorney fees, and any award that Van Norman might recover against it. *Id.* at 83-84. Mid-Continent refused to defend or indemnify True Oil based on Wyoming's Anti-Indemnity Statute, Wyo. Stat. Ann. § 30-1-131, which invalidates agreements related to oil or gas wells that "indemnify the indemnitee against loss or liability for damages for . . . bodily injury to persons." *Id.*

In May 2002, True Oil brought a federal action against Mid-Continent for declaratory relief, breach of contract (CGL policy), and other related claims. In February 2005, the district court granted Mid-Continent summary judgment,

---

[1] Halliburton Energy Services, Inc., and Weatherford Completion Systems were also named defendants but were dismissed from the suit in 2005.

determining that the MSC's indemnity provision, when invoked with respect to claims of the indemnitee's own negligence, violated § 30-1-131 and was thus unenforceable as a matter of public policy. The court held that Mid-Continent was not required to defend or indemnify True Oil in the underlying suit as it then existed because "where an indemnification provision in a MSC is void and unenforceable, the insurer never actually assumed any of the indemnitee's liabilities under the policy."[2] Aplt. App., vol. 2 at 513.

Subsequently, on March 16, 2005, Mr. Van Norman amended his original state court complaint to include an allegation of vicarious liability against True Oil for negligence of Pennant that had caused injury to Mr. Van Norman. True Oil then filed a third-party complaint against Pennant for indemnification.

In September 2005, Mid-Continent agreed to provide True Oil a conditional defense to the vicarious liability claim in the state court action, under a reservation of rights. In November, unable to agree upon the terms of the defense, True Oil refused Mid-Continent's offer to defend. The following month, just prior to the December scheduled trial date, True Oil settled with Mr. Van Norman for $500,000 for the claims alleged in the amended complaint. While Pennant did not participate in the negotiations, it did stipulate to the reasonableness of the settlement.

---

[2] The district court's Order on Cross Motions for Summary Judgment was filed on February 9, 2005, and its judgment was entered on March 4, 2005. True Oil filed a notice of appeal on March 17, 2005.

On September 28, 2005, Mid-Continent returned to federal district court, seeking a declaratory judgment regarding its rights and obligations in light of the amended complaint. In March 2006, while those proceedings were pending, we affirmed the district court's entry of summary judgment in favor of Mid-Continent in the first federal court action with no knowledge of the amended complaint in the underlying state court lawsuit. *True Oil Co. v. Mid-Continent Cas. Co.*, 173 F. App'x 645, 646-51 (10th Cir. 2006).

In August 2006, the district court granted True Oil summary judgment, concluding Mid-Continent was obligated to provide True Oil a defense and indemnification in the underlying litigation on the vicarious liability claims. In doing so, the court rejected Mid-Continent's contention that the Tenth Circuit decision in the first case was dispositive, distinguishing between True Oil's efforts to obtain indemnification for its *own negligence* in the first case and its efforts to obtain indemnification for *vicarious liability* from Pennant's negligence. The court held that where a claim of vicarious liability exists, the Wyoming Anti-Indemnity Statute, § 30-1-131, does not render the agreement void or unenforceable with respect to that claim. It then stayed the proceeding pending the completion of the state court litigation, the remaining third-party action between True Oil and Pennant.

Following a bench trial in August 2008, the state court found that Pennant "breached its contract with True Oil, and that the damages were equal to the

settlement amount True Oil has paid Van Norman." *Pennant Serv. Co., Inc. v. True Oil Co.*, 249 P.3d 698, 702 (Wyo. 2011). The court also ordered Pennant to pay attorney fees beginning from the time the complaint was amended in 2005. *Id*. Pennant appealed, contending that True Oil was a mere volunteer facing no potential liability when it settled with Mr. Van Norman, and True Oil cross-appealed the denial of attorney fees it incurred prior to the amended complaint.

The Wyoming Supreme Court disagreed with Pennant's claims on appeal. It held that "by stipulating to the reasonableness of the $500,000.00 settlement paid by True Oil to Van Norman, Pennant supported True Oil's 'potential liability' for Pennant's negligence." *Id.* at 707. The court further held that True Oil was entitled under the MSC to attorney fees it incurred in defending itself from the beginning of the state court action. *Id.* at 710. The court thus affirmed the breach of contract finding and the $500,000 damages award, and it also extended True Oil's entitlement to attorney fees from the date Mr. Van Norman filed his original complaint. *Id.* at 712.

In light of and consistent with the resolution of the state proceeding, the federal district court awarded True Oil $500,000, attorney fees from October 2001 to December 7, 2005, and pre- and postjudgment interest on both amounts. Mid-Continent appeals.

**II**

-6-

We review a grant of summary judgment de novo, applying the same legal standard used by the district court under Fed. R. Civ. P. 56(a). *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 997 (10th Cir. 2011). Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, we resolve factual disputes and draw reasonable inferences in favor of the non-moving party. *Twigg*, 659 F.3d at 997. We apply substantive Wyoming law in this diversity action.[3] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

## A. Res Judicata

Mid-Continent first contends True Oil "chose to omit the issue" of vicarious liability in the first federal case, Aplt. Br. at 20, and it is therefore precluded from "relitigating the issue of insurance coverage" by the doctrine of res judicata and the prohibition against claim splitting, *id.* at 18.[4] We apply state law to determine the "claim-preclusive effect of a federal diversity judgment." *Hartsel Springs Ranch of Colo., Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986 (10th Cir. 2002) (courts should "adopt the law that would be applied by state courts in

---

[3] True Oil is a citizen of the State of Wyoming and Mid-Continent is a citizen of the State of Oklahoma.

[4] Mid-Continent originally alleged True Oil's claim of coverage was precluded by res judicata, the rule against claim splitting, and collateral estoppel. Aplt. Br. at 15. At oral argument, Mid-Continent conceded that collateral estoppel, or issue preclusion, is not an issue in this case.

the State in which the federal diversity court sits" (internal quotation marks omitted)).

In Wyoming, "a final judgment on the merits in a prior action is conclusive and bars all subsequent action between the same parties, or their privies, as to all matters which were or might have been litigated in the prior action." *McCulloh v. Drake*, 24 P.3d 1162, 1171 (Wyo. 2001); *see also Burlington N. R.R. Co. v. Dunkelberger*, 918 P.2d 987, 992 (Wyo. 1996) ("A defendant may not litigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff." (internal alteration and quotation marks omitted)). Res judicata applies where: "(1) the parties were identical; (2) the subject matter was identical; (3) the issues were the same and related to the subject matter; and (4) the capacities of the persons were identical in reference to both the subject matter and the issues between them." *McCulloh*, 24 P.3d at 1171 (internal quotation marks omitted).

Wyoming also follows the general rule prohibiting splitting a cause of action. *Lane Co. v. Busch Dev., Inc.*, 662 P.2d 419, 421 (Wyo. 1983). A cause of action is the "fact or combination of facts which give[] rise to a suit." *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.*, 714 P.2d 328, 337 (Wyo. 1986) (internal quotation marks and citations omitted). When two complaints involve "the same basic factual circumstances which are alleged to give rise to [the plaintiff's] right to maintain an action against [the defendant]," the latter

-8-

complaint is barred. *Id.* Wyoming courts view res judicata and the rule against claim splitting as "closely related." *Id.* at 336.[5]

Mid-Continent's res judicata and impermissible claim splitting arguments are virtually indistinguishable in their reasoning: True Oil was aware it might face vicarious liability for Pennant's negligence prior to the first decision of the federal district court and *chose* to omit the issue from consideration in that action. Mid-Continent contends that both causes of action "arise from the same 'series' [of facts] . . . and form[] 'a convenient trial unit' . . . ." *See, e.g.*, Aplt. Br. at 20-21 (quoting *Rialto*, 714 P.2d at 337) (internal quotation marks omitted). But, the key fact—Mr. Van Norman's vicarious liability claim—did not *exist* until after final judgment in the first federal court action, in other words, until after the "convenient trial unit." In the first case, True Oil sought a defense and indemnity for its alleged negligence, the only claim pending against it, whereas in the present litigation, it seeks a defense and indemnity for its alleged vicarious liability for the negligence of Pennant, the new claim brought by Mr. Van Norman. These causes of action contain different factual circumstances giving rise to distinct rights to maintain an action.

As the district court explained, res judicata does not apply to "preclude

---

[5] "[T]he rule [against splitting] differs from res judicata inasmuch as it is based exclusively on public policy[, for example] . . . to prevent multiplicity of suits, prevent vexatious litigation, and to avoid duplication of costs and expenses," rather than on the "finality of prior adjudication." *Hurst v. Davis*, 386 P.2d 943, 949 (Wyo. 1963).

litigation of a claim or cause of action that had not been asserted at the time of [its] February 2005 decision." Aplt. App., vol. 4 at 1240. Mid-Continent protests that it "should not be required to provide a defense for a claim that wasn't asserted and which it was unaware was in issue." Aplt. Br. at 21. However, Mid-Continent demands *exactly* that of True Oil. Only after the district court entered a final judgment on March 4, 2005, did Mr. Van Norman amend his complaint to allege vicarious liability. Mid-Continent offers no authority that permits, much less compels, a party to preemptively raise a defense against a claim not yet made in order to prevent its preclusion in a later action. To require as much would place an impossible burden on True Oil and similarly situated defendants. Accordingly, True Oil's claim for a defense against and indemnity for its vicarious liability is not precluded.

## B. *Indemnification for Vicarious Liability*

Mid-Continent next contends the district court improperly held it had a duty to indemnify True Oil against the allegations of vicarious liability. In granting summary judgment, the court explained:

> Pennant agreed to indemnify True in the MSC. Coverage for this agreement is provided for in the CGL. The agreement to indemnify is void only to the extent that it was one which purported to relieve True Oil from loss of liability caused by True Oil's own negligence. The agreement providing for indemnification from all claims and damages caused by the negligence of others, which would include the claims of vicarious liability in this case, is valid and enforceable under applicable Wyoming law.

-10-

Aplt. App., vol. 4 at 1244-45 (footnote omitted).

Under its CGL policy, Mid-Continent agreed to cover Pennant's liability for damages "[a]ssumed in a contract or agreement that is an 'insured contract.'" Aplt. App., vol. 1 at 24. Thus, although the CGL policy generally excluded contractual liability from coverage, it *excepted* damages assumed in an insured contract. According to the policy, an "insured contract" includes:

> [t]hat part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Aplt. App., vol. 1 at 34.

A promise to indemnify an indemnitee for its indemnitor's negligence is valid and enforceable under Wyoming law. *Gainsco Ins. Co. v. Amoco Prod. Co.*, 53 P.3d 1051, 1075 (Wyo. 2002). Pennant agreed to indemnify True Oil for all damages, including attorney fees, "arising out of, caused in whole or in part by or resulting directly or indirectly from any act or omission, including negligence of [Pennant and True Oil]." Aplt. App., vol. 1 at 44. While we held on appeal in the first action that the Wyoming Anti-Indemnity Statute voided the MSC indemnity agreement as applied to coverage of True Oil's own negligence, we noted that "were it not for the operation of Wyo. Stat. Ann. § 30-1-131, an insured contract would exist between Pennant and True Oil – and, accordingly, True Oil would be an additional insured on Pennant's CGL policy with Mid-

-11-

Continent." *True Oil Co.*, 173 F. App'x at 650.[6]

Wyoming has previously recognized contractual liability coverage for an "insured contract" under almost identical CGL policy language and circumstances. *See, e.g.*, *Gainsco*, 53 P.3d at 1054-57, 1066. In *Gainsco*, Amoco Production Company (Amoco) and Andrews Trucking Company (Andrews) entered into an MSC whereby Andrews agreed to indemnify Amoco against tort liability to Andrews' employees and its subcontractors' employees. *Id.* at 1054. Andrews was insured by Gainsco Insurance Company (Gainsco). *Id.* Like Mid-Continent's CGL policy, Gainsco's policy included an exception to the coverage exclusion for "liability . . . assumed under an 'insured contract.'"[7] *Id.* at 1057. After one of Andrews' subcontractor's employees was killed, the employee's

---

[6] We also pointed out "[a]s an initial matter, it is important that we emphasize what is not at issue in this case. True Oil has not sued Pennant. Thus, we are not called upon to interpret the exact contours of the MSC, which appears to obligate Pennant to obtain insurance in favor of True Oil." *True Oil Co.*, 173 F. App'x at 649.

[7] The "insured contract" definition in Gainsco's policy is almost identical to the policy here except it included an exclusion for contracts that indemnify a party for the indemnitee's sole tort liability. *Compare Gainsco*, 53 P.3d at 1057, *with* Aplt. App., vol. 1 at 34-35. The only substantial difference is that Gainsco's policy states: "However, this insurance does not apply to that part of any contract or agreement that indemnifies any person or organization for the indemnitee's sole tort liability." *Gainsco*, 53 P.3d at 1057; *see* Aplt. App., vol. 1 at 34-35. As "no one contended that Amoco was 100% at fault, . . . the contract indemnifying Amoco was an insured contract." *Gainsco*, 53 P.3d at 1066.

-12-

estate sued Amoco and Amoco settled.[8]  *Id.* at 1054.  Amoco then sued Andrews under the MSC's indemnity provision.  *Id.* at 1055.  Andrews settled with Amoco, including an agreement for a confessed judgment for Amoco and the condition that Amoco would only execute it against Gainsco.  *Id.*  Amoco sought a declaratory judgment against Gainsco.  The Wyoming Supreme Court held that "Amoco's claims were within the coverage of Gainsco's policy."  *Id.* at 1080.[9]

Mid-Continent contends the intervening state court decision in *Pennant* only resolved a contractual question, "whether . . . Pennant was liable to True contractually," rather than a coverage question.  Aplt. Br. at 26.  It argues its policy does not provide coverage for breach of contract damages, and also contends True Oil voluntarily settled without being either legally liable or an insured.  We disagree with these contentions.

Despite this case's convoluted history, we decline Mid-Continent's invitation to relitigate matters resolved most recently by the Wyoming Supreme Court.  When "an intervening decision of a state's highest court has resolved an issue of state law directly contrary to this circuit's prediction of how the state

---

[8] The claimant also sued the subcontractor and Andrews, but the claim against the subcontractor was dismissed because of workers' compensation immunity and the claim against Andrews was decided in favor of Andrews on summary judgment, with the court finding Andrews owed no legal duty to the deceased.  *Gainsco*, 53 P.3d at 1054.

[9] The court found, however, that Amoco's settlement amount was unreasonable, and that Gainsco had not received notice of a key settlement term and was thus excused from payment.  *Gainsco*, 53 P.3d at 1080.

-13-

would resolve the same issue, we are bound by the later state ruling, not by our prior panel's interpretation of state law." *Blackhawk-Central City Sanitation Dist. v. Am. Guar. & Liab. Ins. Co.*, 214 F.3d 1183, 1194 n.4 (10th Cir. 2000); *Kinnison v. Houghton*, 432 F.2d 1274, 1277 (10th Cir. 1970) (holding we had to follow intervening state court decision despite it being contrary to an earlier Tenth Circuit decision involving the same case).

First, we cannot follow Mid-Continent's semantic gymnastics, which characterizes the settlement payment as breach of contract damages rather than indemnification damages in order to deny coverage. To the contrary, the Wyoming Supreme Court found that True Oil's $500,000 settlement payment to Mr. Van Norman was "indemnification damages for bodily injuries." *Pennant*, 249 P.3d at 707-08.

Second, Mid-Continent contends the Wyoming Supreme Court's post-settlement determination that Pennant was an independent contractor[10] and 100% at fault negates the requisite "potential liability" required for a settlement to be made in good faith. Moreover, Mid-Continent asserts that True Oil was never even potentially liable for Pennant's negligence because True Oil's "vicarious liability was a legal impossibility . . . where [Pennant's employee] received . . .

---

[10] The workplace owner contracting with an independent contractor is generally not held vicariously liable for tortious acts or omissions of the contractor or the contractor's employees, unless the owner maintains control over the contractor's work or assumes affirmative safety duties. *Franks v. Indep. Prod. Co.*, 96 P.3d 484, 490 (Wyo. 2004).

workers compensation benefits." Aplt. Br. at 38-39. Mid-Continent is wrong on both counts.

Where an indemnitor is given notice of settlement discussions and chooses not to participate, an "indemnitee is only required to prove . . . potential liability to the original plaintiff in order to support a claim against the indemnitor." *Pan Am. Petroleum Corp. v. Maddux Well Serv.*, 586 P.2d 1220, 1225 (Wyo. 1978). Potential liability exists unless an indemnitee faced "no exposure to legal liability." *Pennant*, 249 P.3d at 704.

> The threshold for 'potential liability' is not high, nor should it be. Where notice has been given to the indemnitor and the indemnitor has elected not to act to protect himself, he, in effect, consents to allow the indemnitee to act for him and will not be heard to complain about the outcome—except in the very limited circumstance where the indemnitee was not, in fact, at risk, but nevertheless paid money that it would never have owed to the plaintiff.

*Id.* (internal quotation marks and citation omitted).

At the time True Oil settled with Mr. Van Norman, the state trial court had denied its motion for summary judgment, concluding that "genuine issues of material fact exist concerning the degree of control exercised by True Oil and True Oil's assumption of affirmative safety duties." Aple. Supp. App. at 28. Furthermore, as the Wyoming Supreme Court held, "potential liability was established when the Van Norman complaint was amended to include a claim for vicarious liability. This conclusion was based upon much more than the mere allegation, but the showing by True Oil throughout the lawsuit [thereafter] that it

was potentially liable." *Pennant*, 249 P.3d at 707. The state trial court's factual findings *subsequent* to the settlement, to which Mid-Continent points, cannot negate True Oil's potential liability at the time of settlement.

Likewise, Wyoming's Worker's Compensation Act does not bar an employee who is paid worker's compensation from asserting a claim against a third party, or the third party's resulting claim for indemnity against the employer. *Cities Serv. Co. v. N. Prod. Co.*, 705 P.2d 321, 323-24 (Wyo. 1985). While the Worker's Compensation Act prevents a third party from recovering from an employer by way of contribution, "[t]he clearest exception to the exclusive-liability clause [of the Act] is the third party's right to enforce an express contract in which the employer agrees to indemnify the third party for the very kind of loss that the third party has been made to pay to the employee." *Id.* at 325-26 (quoting 2A Larson, The Law of Workmen's Compensation § 76.42) (internal quotation marks omitted). Where there is an express indemnity agreement between the third party and the employer, as there is in our case, the employer has "contract[ed] away th[e] protection" otherwise afforded by worker's compensation. *Id.* at 326.

Finally, we are bound by the Wyoming Supreme Court's holding that the indemnity agreement is a "valid and enforceable part of the MSC" to the extent that it indemnifies True Oil for its vicarious liability. *Pennant*, 249 P.3d at 710. As such, it is an "insured contract" under Mid-Continent's CGL policy, and the

damages assumed therein are covered by the policy.

### C. Attorney Fees

The Wyoming Supreme Court also held Pennant responsible under the MSC for the costs True Oil incurred defending itself against claims for which Pennant was fully at fault, including the attorney fees it incurred prior to the date of Mr. Van Norman's amended complaint. *Id.* ("Relieving True Oil of any negligence, but then denying its attorney's fees in defending itself against Pennant was an abuse of discretion by the district court."). Relying on the Wyoming Supreme Court's decision regarding the MSC, the district court awarded True Oil attorney fees from October 2001 to March 15, 2005. Mid-Continent appeals the award of attorney fees covering the period prior to the time Mr. Van Norman amended his complaint, arguing that the "duty to pay attorneys fees under the [MSC] and the insurance policy are distinctly different." Aplt. Br. at 42.

While the Wyoming Supreme Court did not interpret Mid-Continent's insurance policy per se, it interpreted what damages were assumed in the "insured contract" for which Mid-Continent provided coverage. Significantly, it held "Pennant was well aware of True Oil's vicarious liability risk . . . and agreed . . . to indemnify True Oil for *any damages* resulting therefrom." *Pennant*, 249 P.3d at 707 (emphasis added); *see* Aplt. App., vol. 1 at 24 (providing coverage for attorney fees of a third party where "[l]iability to such party for, or for the cost of, that party's defense has also been assumed in the same 'insured contract'").

-17-

The court held that Pennant assumed liability for the attorneys fees True Oil paid to defend itself against claims for which, as it turned out, Pennant was 100% responsible. *Pennant*, 249 P.3d at 710. For the reasons previously discussed, we apply Wyoming's determination that True Oil's 2001-2005 attorney fees are covered by the MSC, which necessarily triggers Mid-Continent's coverage for "damages" that it agreed to cover in its CGL policy.

In sum, we AFFIRM the district court's determination that True Oil is entitled to recover its settlement payment, attorney fees from 2001 to 2005, and pre- and postjudgment interest.